IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION


JOSE OSVALDO TORRES,
      Petitioner,

vs.                                      Case No. 3:08cv396/LAC/EMT

WALTER McNEIL,
      Respondent.
_____/

## REPORT AND RECOMMENDATION

This cause is before the court on Petitioner's petition for writ of habeas corpus filed under 28 U.S.C. § 2254 (Doc. 1). Respondent filed an answer and relevant portions of the state court record (Doc. 19). Petitioner filed a reply (Doc. 24).

The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N. D. Fla. Loc. R. 72.2(b). After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a). It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.      BACKGROUND AND PROCEDURAL HISTORY

The relevant aspects of the procedural background of this case are established by the state court record (*see* Doc. 19, Exhibits).[1] Petitioner was charged in the Circuit Court for Okaloosa County, Florida, with one count of lewd or lascivious molestation of a person less than sixteen (16) years of age and one count of lewd or lascivious conduct (Ex. B at 2). Following a jury trial,

---

[1] Hereinafter all citations to the state court record refer to the exhibits submitted with Respondent's answer (Doc. 19).

Petitioner was convicted as charged (Exs. E, H). Petitioner was adjudicated guilty on August 6, 2003, and sentenced to consecutive terms of ten (10) years of imprisonment, with pre-sentence jail credit of 273 days (Exs. I, J ). Petitioner, through counsel, filed a notice of appeal with the Florida First District Court of Appeal ("First DCA") (Ex. K). The First DCA initially dismissed the appeal for defense counsel's failure to file a docketing statement, but subsequently reinstated the appeal (Exs. L, N). <u>Torres v. State</u>, 878 So. 2d 481 (Fla. 1st DCA 2004). Petitioner's counsel filed a brief, pursuant to <u>Anders v. California</u>, 386 U.S. 738 (1967), asserting that there were no meritorious arguments to support the contention that the trial court committed significant reversible error during Petitioner's trial (Ex. O). Petitioner filed a pro se initial brief (Ex. P). On July 22, 2005, the First DCA affirmed the judgment of conviction per curiam without written opinion, with the mandate issuing September 7, 2005 (Ex. Q). <u>Torres v. State</u>, 909 So. 2d 866 (Fla. 1st DCA 2005) (Table). Petitioner did not seek further review by the Florida Supreme Court or the United States Supreme Court.

On September 11, 2005, Petitioner filed a motion to reduce or modify sentence, pursuant to Rule 3.800(c) of the Florida Rules of Criminal Procedure (Ex. FF). The trial court denied the motion October 12, 2005 (*id.*).

On January 24, 2006, Petitioner filed a motion for post-conviction relief, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Ex. S). He subsequently filed an amended motion (Ex. T). On April 24, 2007, the trial court denied the motion without an evidentiary hearing (Ex. Y). Petitioner appealed the decision to the First DCA. The appellate court affirmed per curiam without written opinion on May 16, 2008, with the mandate issuing July 14, 2008 (Ex. DD). <u>Torres v. State</u>, 984 So. 2d 1253 (Fla. 1st DCA 2008) (Table).

Petitioner filed the instant habeas action on September 3, 2008 (Doc. 1). Respondent concedes that the petition is timely (Doc. 19 at 5).

II.     STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States. As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for

habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA). Pub.L. 104-132, § 104, 110 Stat. 1214, 1218-19. In relevant part, section 2254(d) now provides:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[2]  The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court.  Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

---

[2] Unless otherwise noted, references to Williams are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring); <u>Ramdass v. Angelone</u>, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000).  In employing this test, the Supreme Court has instructed that on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  <u>Lockyer v. Andrade</u>, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case."  <u>Neelley v. Nagle</u>, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by* <u>Parker v. Head</u>, 244 F.3d 813, 835 (11th Cir. 2001).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'"  <u>Lockyer</u>, 538 U.S. at 73 (quoting <u>Williams</u>, 529 U.S. at 405–06).  The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."  <u>Early v. Packer</u>, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (quoting <u>Williams</u>, 529 U.S. at 405–06).  If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable."  <u>Williams</u>, 529 U.S. at 409.  Whether a State court's decision was an unreasonable application of legal principle must be assessed in light of the record the court had before it.  <u>Holland v. Jackson</u>, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683

(2004) (per curiam); *cf.* Bell v. Cone, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law). An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001). The State court's incorrect or erroneous application of clearly established law will be held to be reasonable and not warrant a writ so long as the State court adjudication results in a "satisfactory conclusion." Williams, 529 U.S. at 410–12.

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has clarified that: "a decision adjudicated on the merits in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); *see e.g.* Miller-El, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); Jones v. Walker, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact.").

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. *See* Panetti v. Quarterman, 531 U.S. 930, 953, 127 S. Ct. 2842, 2858, 168 L.

Ed. 2d 662 (2007); <u>Jones</u>, 469 F.3d 1216 (same). The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

III.    EXHAUSTION AND DEFAULT

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, 28 U.S.C. § 2254(b)(1),[3] thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." <u>Duncan v. Henry</u>, 513 U.S. 364, 365, 115 S. Ct. 887, 888, 130 L. Ed. 2d 865 (1995) (quoting <u>Picard v. Connor</u>, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)). To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim. <u>Duncan</u>, 513 U.S. at 365–66; <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); <u>Picard</u>, 404 U.S. at 277–78.

The Supreme Court has offered the following guidance for determining whether a habeas petitioner has met the "fair presentation" requirement. In <u>Picard v. Connor</u>, the Court held that, for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief. 404 U.S. at 277. In announcing that "the substance of a federal habeas corpus claim must first be presented to the state courts," <u>id.</u>, 404 U.S. at 278, the Court rejected the contention that the petitioner satisfied the exhaustion requirement by presenting the state courts only with the facts necessary to state a claim for relief.

_____

[3]Section 2254 provides, in pertinent part:

(b)(1)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that–
          (A)  the applicant has exhausted the remedies available in the courts of the State; or
          (B) (i)  there is an absence of available State corrective process; or
               (ii)  circumstances exist that render such process ineffective to protect the rights of the applicant.
. . . .
(c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

Additionally, the Court has indicated that it is insufficient to make a general appeal to a constitutional guarantee as broad as due process to present the "substance" of such a claim to a state court.  In <u>Anderson v. Harless</u>, 459 U.S. 4, 103 S. Ct. 276, 74 L. Ed. 2d 3 (1982), the habeas petitioner was granted relief on the ground that a jury instruction violated due process because it obviated the requirement that the prosecutor prove all the elements of the crime beyond a reasonable doubt.  *Id.* 459 U.S. at 7 (citing <u>Sandstrom v. Montana</u>, 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979)).  The only manner in which the habeas petitioner cited federal authority was by referring to a state court decision in which "the defendant . . . asserted a broad federal due process right to jury instructions that properly explain state law."  <u>Anderson</u>, 459 U.S. at 7 (internal quotation marks omitted).  The Court expressed doubt that a defendant's citation to a state-court decision predicated solely on state law was sufficient to fairly apprise a reviewing court of a potential federal claim merely because the defendant in the <u>cited</u> case advanced a federal claim.  *Id.*, 459 U.S. at 7 and n.3.  Furthermore, the Court clarified that such a citation was obviously insufficient when the record satisfied the federal habeas court that the federal claim asserted in the cited case was not the same as the federal claim on which federal habeas relief was sought.  *Id.*

Years later, the Supreme Court readdressed the "fair presentation" requirement in <u>Duncan v. Henry</u>, 513 U.S. 364.  The <u>Duncan</u> Court strictly construed the exhaustion requirement so as to mandate that, if state and federal constitutional law overlap in their applicability to a petitioner's claim, the petitioner must raise his issue in terms of the applicable federal right in state court in order to obtain federal review of the issue.[4]  The Supreme Court explained, "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal, but in state court."  <u>Duncan</u>, 513 U.S. at 365–66.  Recently, the Supreme Court again focused upon the requirement of "fair presentation," holding that  "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the

---

[4] The petitioner in <u>Duncan</u> raised a federal due process claim in his habeas petition, but had raised only a state constitutional claim in his state appeal.  Presented with a state constitutional claim, the state court applied state law in resolving the appeal.

case, that does so." <u>Baldwin v. Reese</u>, 541 U.S. 27, 124 S. Ct. 1347, 1351, 158 L. Ed. 2d 64 (2004).

The <u>Baldwin</u> Court commented that "[a] litigant wishing to raise a federal issue can easily indicate

the federal law basis for his claim in a state-court petition or brief, for example, by citing in

conjunction with the claim the federal source of law on which he relies or a case deciding such a

claim on federal grounds, or by simply labeling the claim 'federal.'" *Id.*, 541 U.S. at 32. With

regard to this statement, the Eleventh Circuit stated in <u>McNair v. Campbell</u>, 416 F.3d 1291 (11th Cir.

2005):

> If read in a vacuum, this dicta might be thought to create a low floor indeed for
> petitioners seeking to establish exhaustion. However, we agree with the district court
> that this language must be "applied with common sense and in light of the purpose
> underlying the exhaustion requirement[:] 'to afford the state courts a meaningful
> opportunity to consider allegations of legal error without interference from the
> federal judiciary.'" <u>McNair</u> [<u>v. Campbell</u>], 315 F. Supp. 2d at 1184 (quoting
> <u>Vasquez v. Hillery</u>, 474 U.S. 254, 257, 106 S. Ct. 617, 620, 88 L. Ed. 2d 598 (1986)).
> This is consistent with settled law established by the Supreme Court. . . . We
> therefore hold that "'[t]he exhaustion doctrine requires a habeas applicant to do more
> than scatter some makeshift needles in the haystack of the state court record.'"

416 F.3d at 1302-03 (citations omitted).[5]

An issue that was not properly presented to the state court and which can no longer be

litigated under state procedural rules is considered procedurally defaulted, that is, procedurally

barred from federal review. <u>Bailey v. Nagle</u>, 172 F.3d 1299, 1302–03 (11th Cir. 1999). This court

will also consider a claim procedurally defaulted if it was presented in state court and rejected on

the independent and adequate state ground of procedural bar or default. *See* <u>Coleman v. Thompson</u>,

501 U.S. 722, 734–35 and n.1, 111 S. Ct. 2546, 2555 and n.1, 115 L. Ed. 2d 640 (1991); <u>Caniff v.</u>

<u>Moore</u>, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally

defaulted under state law cannot be addressed by federal courts."); <u>Chambers v. Thompson</u>, 150 F.3d

1324, 1326–27 (11th Cir. 1998) (applicable state procedural bar should be enforced by federal court

---

[5] In his initial brief before the Court of Criminal Appeals, the petitioner cited one federal case in a string citation
containing other state cases, and in a closing paragraph in his argument that extraneous materials were considered by
the jury during deliberations, stated that there was a violation of his rights "protected by the Fifth, Sixth, Eighth[,] and
Fourteenth Amendments to the United States Constitution, the Alabama Constitution[,] and Alabama law." <u>McNair v.</u>
<u>Campbell</u>, 416 F.3d 1291, 1303 (11th Cir. 2005). The court found that these references to federal law were not sufficient
to meet the fair presentment requirement and noted that it was important that the petitioner had never mentioned the
federal standards regarding extraneous materials in his brief, but relied on state law for his arguments. *Id.*

even as to a claim which has never been presented to a state court); *accord* Tower v. Phillips, 7 F.3d 206, 210 (11th Cir. 1993); Parker v. Dugger, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L. Ed. 2d 812 (1991). In the first instance, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine. Bailey, 172 F.3d at 1303. In the second instance, a federal court must determine whether the last state court rendering judgment clearly and expressly stated its judgment rested on a procedural bar. *Id.*. A federal court is not required to honor a state's procedural default ruling unless that ruling rests on adequate state grounds independent of the federal question. *See* Harris v. Reed, 489 U.S. 255, 109 S. Ct. 1038, 1043, 103 L. Ed. 2d 308 (1989). The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question. Lee v. Kemna, 534 U.S. 362, 122 S. Ct. 877, 885, 151 L. Ed. 2d 820 (2002). The Eleventh Circuit has set forth a three-part test to determine whether a state court's procedural ruling constitutes an independent and adequate state rule of decision. Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001). First, the last state court rendering judgment must clearly and expressly state it is relying on state procedural rules to resolve the federal claim.[6] Second, the state court's decision on the procedural issue must rest entirely on state law grounds and not be intertwined with an interpretation of federal law. Third, the state procedural rule must be adequate. *Id.* The adequacy requirement has been interpreted to mean the rule must be firmly established and regularly followed, that is, not applied in an arbitrary or unprecedented fashion. *Id.*

To overcome a procedural default, the petitioner must show cause and prejudice or a fundamental miscarriage of justice in order for the federal habeas court to reach the merits of a claim. Tower, 7 F.3d at 210; Parker, 876 F.2d 1470. "For cause to exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." McCleskey v. Zant, 499 U.S. 467, 497, 111 S. Ct. 1454, 1472, 113 L. Ed. 2d 517 (1991) (quoting Murray v. Carrier, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L. Ed. 2d 397 (1986)). Lack of counsel or ignorance of available

---

[6] The federal court should honor the procedural bar even if the state court alternatively reviewed the claim on the merits. Marek v. Singletary, 62 F.3d 1295, 1302 (11th Cir. 1995); Alderman v. Zant, 22 F.3d 1541 (11th Cir. 1994).

procedures is not enough to establish cause. <u>Tower</u>, 7 F.3d at 210. To satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." <u>Schlup v. Delo</u>, 513 U.S. 298, 327, 115 S. Ct. 85, 130 L. Ed. 2d 808 (1995). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him." <u>Schlup</u>, 513 U.S. at 327. Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial.

*Id.*

Within this framework, the court will review Petitioner's claims.

## IV. PETITIONER'S CLAIMS

### A. Ground 1A: "Ineffective assistance of counsel and due process violation when trial counsel eliminated all presumption of innocence from Petitioner when he was testifying to the jury."

In Ground 1A, Petitioner contends defense counsel "eradicated" the presumption of Petitioner's innocence and eliminated his credibility by eliciting testimony from him that he had been awaiting trial in the Okaloosa County Jail for seven and a half months, and then emphasizing this fact during closing argument (Doc. 1 at 4–6).[7]

Respondent concedes that Petitioner exhausted this claim of ineffective assistance of counsel by presenting it as Issue Five in his Rule 3.850 motion and appealing the trial court's denial of the claim to the First DCA (Doc. 19 at 9). However, Respondent contends Petitioner is not entitled to federal habeas relief because he failed to establish that the state court's adjudication of the claim was based upon an unreasonable determination of the facts or was contrary to or an unreasonable application of clearly established federal law (*id.* at 16–20).

---

[7] The page references used in this Report reflect the page numbers as enumerated in the court's electronic docketing system rather than those the parties may have assigned.

Case No. 3:08cv396/LAC/EMT

Respondent additionally contends that to the extent Petitioner also asserts a due process challenge to counsel's conduct, Petitioner failed to exhaust his due process claim in the state courts (*id.* at 9–12). Further, the claim can no longer be litigated under state procedural rules; therefore, it is procedurally barred from federal review (*id.* at 12–13). Respondent argues Petitioner has not established cause for the default and actual prejudice, nor has Petitioner demonstrated that this court's failure to consider the claim will result in a fundamental miscarriage of justice (*id.* at 13–16). Therefore, he is not entitled to federal review of his due process claim (*id.*).

In Petitioner's reply, he argues he presented his due process claim to the state courts by virtue of presenting his ineffective assistance of counsel claim, because counsel's conduct "was tantamount to a denial of due process" (Doc. 24 at 3–7).

The standard established by the Supreme Court for analyzing claims of ineffective assistance of counsel, set forth in <u>Strickland v. Washington</u>, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1994), includes an analysis of whether counsel's conduct deprived the defendant of a fair trial. *See* <u>Weeks v. Jones</u>, 26 F.3d 1030, 1036–37 (11th Cir. 1994) (under the prejudice prong of the <u>Strickland</u> test, a habeas petitioner must demonstrate a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different; thus, the petitioner must show that his counsel's allegedly deficient performance deprived him of a fair trial) (citing <u>Strickland</u>, 466 U.S. at 687, 694); *see also* <u>Oliver v. McNeil</u>, No. 4:07cv280SPM/WCS, 2008 WL 4724806, at *14 and n.8 (N.D. Fla. Oct. 23, 2008) (failure to satisfy prejudice prong of <u>Strickland</u> standard defeats claim that counsel's alleged error or errors deprived petitioner of fair trial). Therefore, Petitioner's ineffective assistance of counsel claim presented to the state courts subsumed his due process claim; and the state court's adjudication of the ineffective assistance of counsel claim determined the due process claim as well.

1.      Clearly Established Supreme Court Law

As previously discussed, the standard for evaluating claims of ineffective assistance of counsel is set forth in <u>Strickland v. Washington</u>, 466 U.S. 668 (1984). To obtain relief under <u>Strickland</u>, Petitioner must show (1) deficient performance by counsel and (2) a reasonable probability that, but for counsel's deficient performance, the result of the proceeding would have been different. 466 U.S. at 687–88. If Petitioner fails to make a showing as to either performance

or prejudice, he is not entitled to relief. *Id.* at 697. Thus, this court need not address the prejudice prong if the court determines that the performance prong is not satisfied. Turner v. Crosby, 339 F.3d 1247, 1279 (11th Cir. 2003); Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000) ("Because both parts of the test must be satisfied in order to show a violation of the Sixth Amendment, the court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.") (citation omitted).

"The petitioner's burden to prove, by a preponderance of the evidence, that counsel's performance was unreasonable is a heavy one." Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir. 2006) (citing Chandler v. United States, 218 F.3d 1305, 1313 (11th Cir. 2000) (en banc)). The focus of inquiry under the performance prong is "reasonableness under prevailing professional norms." Strickland, 466 U.S. at 688–89. "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. If the record is not complete regarding counsel's actions, "then the courts should presume 'that what the particular defense lawyer did at trial—for example, what witnesses he presented or did not present—were acts that some lawyer might do." Jones, 436 F.3d at 1293 (citing Chandler, 218 F.3d at 1314–15 n.15). Counsel's performance is deficient only if it is "outside the wide range of professional competence." Jones, 436 F.3d at 1293 (citing Strickland, 466 U.S. at 690); Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989) (emphasizing that petitioner was "not entitled to error-free representation").

As stated by the Eleventh Circuit:

> No absolute rules dictate what is reasonable performance for lawyers. [citing Strickland, 104 S.Ct. at 2065; other citations omitted]. "Any such set of rules would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions." Strickland, 104 S. Ct. at 2065; [other citations omitted]. The law must allow for bold and for innovative approaches by trial lawyers. And, the Sixth Amendment is not meant "to improve the quality of legal representation," but "simply to ensure that criminal defendants receive a fair trial." Strickland, 104 S. Ct. at 2065.

Chandler, 218 F.3d at 1307. However, not every strategic decision passes constitutional muster. Whether a particular decision by counsel was a tactical one is a question of fact, Hardwick v.

Crosby, 320 F.3d 1127, 1163 (11th Cir. 2003), and the state court's resolution of that issue enjoys a strong presumption of correctness. *See* 28 U.S.C. § 2254(e)(1); Jackson v. Herring, 42 F.3d 1350, 1367 (11th Cir. 1995); Horton v. Zant, 941 F.2d 1449, 1462 (11th Cir. 1991). Whether a particular tactical decision was a reasonable one, however, is a question of law, Hardwick 320 F.3d at 1163; Jackson, 42 F.3d at 1367; Horton, 941 F.2d at 1462. In determining whether counsel's decision was reasonable, "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." Strickland, 466 U.S. at 689.

As to the prejudice prong of the Strickland standard, Petitioner's burden of demonstrating prejudice is high. Wellington v. Moore, 314 F.3d 1256, 1260 (11th Cir. 2002). The Supreme Court has cautioned that "'[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding.'" *Id.* (quoting Strickland, 466 U.S. at 693). However, the Court has also clarified that a petitioner need not demonstrate it 'more likely than not, or prove by a preponderance of evidence,' that counsel's errors affected the outcome. Strickland, 466 U.S. at 693–94. Instead,

> The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

*Id.* at 694. Indeed, it would be "contrary to" the law clearly established in Strickland for a state court to reject an ineffectiveness claim for failing to prove prejudice by a preponderance of the evidence. Williams v. Taylor, 529 U.S. at 405–406.

The prejudice assessment does "not depend on the idiosyncrasies of the particular decisionmaker," as the court should presume that the judge or jury acted according to law. Strickland, 466 U.S. at 694–95. "When a defendant challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." *Id.* at 695.

## 2. Federal Review of State Court Decision

Petitioner raised this claim of ineffective assistance of counsel as Issue I in his brief on direct appeal of his conviction and as Issue Five in his Rule 3.850 motion (Ex. P at 5–7, Ex. T at 63–65). The last court to adjudicate the merits of the claim was the post-conviction court (*id.*). The trial court denied the claim, and the decision was affirmed by the First DCA . While the affirmance was a per curiam opinion without reasoning, this court presumes that the First DCA's decision affirms the reasoning, as well as the judgment, of the circuit court. "'Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground.'" Sweet v. Sec'y Dept. of Corr., 467 F.3d 1311, 1316–17 (11th Cir. 2006) (quoting Ylst v. Nunnemaker, 501 U.S. 797, 803, 111 S. Ct. 2590, 2594, 115 L. Ed. 2d 706 (1991)); *see also* Harmon v. Barton, 894 F.2d 1268, 1273 (11th Cir. 1990) (noting that the "clear inference" to be drawn from a per curiam affirmance without written opinion is that the appellate court "accepted not only the judgment but the reasoning of the trial court.").

In the trial court's written opinion denying Petitioner's claim, the court identified the Strickland standard as the controlling legal standard for analyzing claims of ineffective assistance of counsel (Ex. Y at 2). Because the state court correctly identified Strickland as the governing precedent, Petitioner is entitled to federal habeas relief only if he demonstrates that the state court decision was based upon an unreasonable determination of the facts or was an unreasonable application of Strickland.

The state court found as fact that during Petitioner's trial testimony, defense counsel asked him how long he had been in the Okaloosa County Jail (Ex. Y at 5). After Petitioner stated he had been in jail for over seven months, defense counsel asked him if he had maintained his innocence from the outset (*id.*). Petitioner responded that he had always maintained his innocence (*id.*). The post-conviction court determined that upon examining counsel's questioning in context, counsel was simply attempting to elicit testimony from Petitioner that he had always maintained his innocence to emphasize that Petitioner maintained his innocence even though he had been in custody for several months (*id.* at 5–6). The court further concluded that the presumption of innocence to which Petitioner was entitled was not abandoned merely because defense counsel asked him how long he had been incarcerated due to the arrest on the charge for which he stood trial (*id.*). Therefore, the court concluded, defense counsel did not commit error by eliciting this testimony (*id.* at 6).

Review of the trial transcript supports the state court's determination that defense counsel questioned Petitioner about the length of his pre-trial detention in an effort to emphasize that Petitioner maintained his innocence even though he had been in custody for several months. The relevant portion of counsel's examination of Petitioner follows:

> Q [by defense counsel]. You didn't have to take the stand this afternoon, did you, Mr. Torres?
>
> A. No, I didn't.
>
> Q. Why did you decide to take the stand or did you ever have any question that you were going to take the stand?
>
> A. No, I wanted to clear my name.
>
> Q. Mr. Torres, how long have you been in the Okaloosa County Jail?
>
> A. Seven and a half months.
>
> Q. Have you always maintained your innocence?
>
> A. Yes, sir.
>
> Q. From day one?
>
> A. Yes, sir.

(Ex. E at 238–39).

In closing argument, defense counsel referred to this testimony to again emphasize that Petitioner consistently maintained his innocence throughout the case:

> As a matter of fact, the only constant in this case has not been L.A.M.'s [the victim's] testimony, hasn't been I[ ]'s [a witness who testified that Petitioner sexually molested her when she was a juvenile], hasn't been J []'s [another witness who testified to similar conduct by Petitioner], and it certainly hasn't been the mother's testimony. There's been no constant there. It's changed. I think we can all agree on that.
>
> The only constant has been my client's testimony. And that testimony is that he stated he was innocent from day one. That's never changed. He has just simply said it didn't happen. He's been seven months in the Okaloosa County Jail telling me it never happened. That's been the only constant in this case.

(*id.* at 310–11).

It is evident from the trial transcript that the theory of defense propounded by defense counsel was that the victim's allegations of sexual molestation were wholly false. In furtherance of this theory, defense counsel emphasized the lack of physical evidence in the case and the inconsistencies and unreliability of the witnesses' testimony, including the victim's, in contrast to the constancy of Petitioner's profession of his innocence. This was a reasonable defense strategy. Counsel's presenting the fact of Petitioner's pre-trial incarceration for seven months was an element of this strategy, because it suggested the steadfastness and consistency of Petitioner's protestation of innocence, and similarly, his resolve to proceed to trial to clear his name, despite the lengthy incarceration he endured while awaiting trial. Therefore, Petitioner failed to demonstrate that his counsel was ineffective for eliciting this testimony and referring to it in his closing argument. Accordingly, the state court's denial of Petitioner's claim was not an unreasonable application of Strickland.

B.    Ground 1B:  "The trial court erred in admitting collateral-crime evidence which denied the Petitioner a fair trial when the collateral-crime evidence was permitted to become a feature of the trial."

Petitioner contends he was denied effective assistance of counsel when defense counsel allowed admission of "collateral crime evidence," namely, testimony from two witnesses that Petitioner had sexually molested them when they were children (Doc. 1 at 6–7). Petitioner states this evidence was inadmissible because the circumstances of the molestation described by the two witnesses were not sufficiently similar to the circumstances of the sexual molestation of which he was accused in this case (*id.*). Petitioner additionally contends the collateral crime evidence became a feature of the trial; and its probative value was far outweighed by the unfair prejudice and confusion caused by its admission (*id.*). Petitioner claims that defense counsel's allowing admission of the evidence deprived him of a fundamentally fair trial (*id.* at 6).

Respondent contends Petitioner failed to exhaust this claim either as a federal due process claim or a claim of ineffective assistance of counsel (Doc. 19 at 20–25). Respondent asserts Petitioner raised a claim of trial court error with regard to admission of the collateral act evidence in his brief on direct appeal, but he presented it only as error under state law (*id.* at 23). Further, Petitioner never presented a claim of ineffective assistance of counsel with respect to admission of

the evidence (*id.* at 21–23). Respondent contends Petitioner cannot return to state court to litigate either claim under state procedural rules; therefore, the claims are procedurally barred from federal review (*id.* at 21–25). Respondent argues Petitioner has not established cause for the default and actual prejudice, nor has Petitioner demonstrated that this court's failure to consider the claim will result in a fundamental miscarriage of justice (*id.*). Therefore, he is not entitled to federal review of his claim of trial court error or ineffective assistance of counsel (*id.*).

In Petitioner's reply brief, he appears to suggest that he exhausted his ineffective assistance of counsel claim by raising it in his brief on direct appeal of his conviction (Doc. 24 at 7–11).

Upon review of the state court record, the undersigned concludes that Petitioner did not present a federal claim with regard to the trial court's admission of the "other crime" evidence. Prior to trial, the State filed a notice of its intent to use "<u>Williams</u> rule" evidence,[8] specifically, evidence that Petitioner previously sexually molested three children, J.S., I.T, and D.B (Ex. C).[9] Defense counsel filed a motion in limine seeking to exclude the evidence on the ground that it was irrelevant, immaterial, and prejudicial (Ex. D). The motion was heard on the day of trial, and defense counsel argued the same grounds (Ex. E at 3–7). Defense counsel did not argue the issue as a federal due process issue; he argued only that the evidence was "highly prejudicial, highly irrelevant, and immaterial" (*id.* at 6). The trial court ruled that the evidence was admissible (*id.*).

In Petitioner's brief on direct appeal of his conviction, he argued that the trial court abused its discretion by admitting the <u>Williams</u> rule evidence (Ex. P at 8–10). Petitioner argued that the evidence was not admissible under <u>Williams</u>, and even if it was, the evidence became "an overwhelming feature of the trial," thereby depriving him of a fundamentally fair trial (*id.*). Although Petitioner sprinkled his argument with assertions that the court's evidentiary ruling deprived him of a fair trial, he did not argue the issue as a federal due process issue or otherwise indicate a federal law basis for his claim. For example, he did not cite in conjunction with his claim

---

[8] <u>Williams v. State</u>, 110 So. 2d 654 (Fla. 1959). Under the <u>Williams</u> rule, evidence of other crimes, wrongs and acts is admissible if it is relevant to and probative of a material issue even though the evidence may indicate the accused has committed other uncharged crimes or may otherwise reflect adversely upon the accused's character. Section 90.404(2)(a), Florida Statutes, (1983), codifies the ruling in <u>Williams</u> and lists the purposes for which such evidence is deemed to be admissible: proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. <u>Buenoano v. State</u>, 527 So. 2d 194, 197 (Fla. 1988).

[9] D.B. did not testify at Petitioner's trial.

a federal source of law on which he relied or a case deciding such a claim on federal grounds, or by simply labeling the claim "federal." Therefore, the undersigned concludes that Petitioner failed to fairly present a federal due process claim to the state courts. *See* <u>Duncan</u>, 513 U.S. at 365–66 ("If a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal, but in state court."); <u>Picard</u>, 404 U.S. at 278. Accordingly, this court applies the familiar principle that federal courts may treat unexhausted claims as procedurally defaulted, even absent a state court determination to that effect, if it is clear from state law that any future attempts at exhaustion would be futile." *Id.* In the instant case, Petitioner's failure to raise a federal argument in his direct appeal or his Rule 3.850 motion in the Florida courts bars him from raising the argument in a successive motion. *See* <u>Turner v. Crosby</u>, 339 F.3d 1247, 1281 (11th Cir. 2003).

Additionally, Petitioner did not raise, either in his brief on direct appeal or in his Rule 3.850 motion, a claim of ineffective assistance of counsel regarding admission of the <u>Williams</u> rule evidence (*see* Exs. P, T). Therefore, the ineffective assistance of counsel claim now presented is procedurally barred. *See* <u>Kelley v. Secretary for Dept. of Corrections</u>, 377 F.3d 1317, 1344–45 (11th Cir. 2004) ("habeas petitioners may not present particular instances of ineffective assistance of counsel in their federal petitions that were not first presented to the state courts").

As previously discussed, Petitioner may escape the procedural default doctrine either through showing "cause for the default and prejudice" or establishing a "fundamental miscarriage of justice." <u>Bailey</u>, 172 F.3d at 1306. "To establish 'cause' for procedural default, a petitioner must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in the state court." <u>Wright v. Hopper</u>, 169 F.3d 695, 703 (11th Cir. 1999). In this case, Petitioner has failed to allege cause for his failure to raise either of these federal claims in the state proceedings. Furthermore, Petitioner has not presented new evidence establishing his actual innocence, so he cannot satisfy the miscarriage of justice exception. <u>Schlup</u>, 513 U.S. at 327; <u>Isaacs v. Head</u>, 300 F.3d 1232, 1255 (11th Cir. 2002). Thus, Petitioner is procedurally barred from federal review of his claims. *See* <u>Bailey</u>, 172 F.3d at 1302–03.

    C.    <u>Ground One: "Ineffective assistance of counsel for failing to object to hearsay victim [sic] identification testimony from the state's medical expert."</u>

Petitioner states Dr. Lynne Keefe testified at trial that she was a board certified pediatrician employed as the Director of the Children's Advocacy Center (CAC) (Doc. 1 at 8). Dr. Keefe testified that L.A.M., the victim in the case, was referred to the CAC (*id.*). Dr. Keefe testified that prior to her examination of L.A.M., a nurse told her that L.A.M. was referred to the CAC because she alleged being sexually abused by her godfather (*id.*). Dr. Keefe further testified that she told L.A.M. that she (Dr. Keefe) had been informed that L.A.M. may have been hurt or injured or was sick, and she asked L.A.M. if she could share her problem (*id.*). Dr. Keefe testified that L.A.M. responded that she had been sexually abused by her godfather (*id.*).

Petitioner contends defense counsel should have objected to this testimony on the ground that statements to medical personnel identifying the perpetrator are not relevant to medical diagnoses or treatment and are, therefore, inadmissible under Florida Statutes Section 90.803(4), (23) (*id.* at 8–9). Petitioner argues he was prejudiced by counsel's failure to object because the hearsay statements identified him as the abuser, and Dr. Keefe's testimony bolstered the victim's credibility (*id.* at 9–10).

Respondent concedes that Petitioner exhausted this claim in the state courts (Doc. 19 at 26). However, Respondent argues, Petitioner is not entitled to relief because he failed to satisfy the AEDPA standard for federal habeas relief (*id.* at 26–29).

1.      Clearly Established Federal Law

The clearly established Supreme Court law governing claims of ineffective assistance of counsel is the two pronged <u>Strickland</u> standard described *supra*.

2.      Federal Review of State Court Decision

Petitioner raised this claim as Issue One in his Rule 3.850 motion (Ex. T at 50–53). In the trial court's written decision denying the claim, the state court found as fact that although Dr. Keefe did not testify that the victim accused Petitioner by name, the victim testified earlier at trial that she considered Petitioner her godfather (Ex. Y at 2). The court additionally found that when the victim testified at trial, she identified Petitioner as her abuser (*id.* at 2–3). In light of the victim's testimony, the court concluded Petitioner failed to show he was prejudiced by defense counsel's failure to object to Dr. Keefe's testimony that the victim stated her godfather was the abuser (*id.* at 3).

Initially, Petitioner concedes that the victim's statements to Dr. Keefe concerning the type of abuse and where it occurred were admissible as statements made for purposes of medical diagnosis or treatment (*see* Doc. 1 at 8–9). Additionally, review of the trial transcript confirms the state court's factual determination that the child victim unequivocally testified that Petitioner was the person who sexually molested her on one occasion and asked her to engage in sexual activity on another (Ex. E at 125–31). In light of the victim's testimony, Petitioner failed to show that the victim's hearsay statement to Dr. Keefe (that the perpetrator was her godfather, but not identifying Petitioner) was particularly damaging to the defense, especially since identity was not an issue at trial, the sole issue was whether the abuse ever occured. Therefore, Petitioner failed to show a reasonable probability that he would have been acquitted if the jury had been told to disregard Dr. Keefe's testimony that the victim told her she was abused by her godfather. Petitioner has thus failed to demonstrate that the state court's denial of this claim was an unreasonable application of <u>Strickland</u>.

    D.    <u>Ground Two: "Ineffective assistance of counsel for failure to object to the erroneous inclusion of eighty-points [sic] on the Petitioner's sentencing guideline score sheet."</u>

Petitioner contends defense counsel should have objected to the addition of eighty (80) victim injury points on his sentencing scoresheet for sexual penetration, since he was only charged with and convicted of sexual touching the victim (Doc. 1 at 10–11). Petitioner asserts that without the 80-point addition, his lowest permissible sentence under the sentencing guidelines would have been 34.5 months (less than three years) instead of 94.5 months (nearly eight years) (*id.* at 11). Petitioner contends if counsel had objected to the extra sentencing points, the court would likely have sentenced him to no more than ten years total, instead of twenty, since the court essentially doubled the minimum sentence in imposing sentence (*id.* at 11–12).

Respondent concedes that Petitioner exhausted this claim in the state courts (Doc. 19 at 29–30). However, Respondent argues, Petitioner is not entitled to relief because he failed to satisfy the AEDPA standard for federal habeas relief (*id.* at 30–35).

    1.    Clearly Established Federal Law

The clearly established Supreme Court law governing claims of ineffective assistance of counsel is the two pronged <u>Strickland</u> standard described *supra*.

2.      Federal Review of State Court Decision

Petitioner raised this claim as Issue Two in his Rule 3.850 motion (Ex. T at 50–56).  In the trial court's written decision denying the claim, the state court found as fact that Petitioner was charged with touching the victim's breasts or genital area, and the victim testified that Petitioner put his finger inside her vagina (Ex. Y at 3).  The court determined that, based upon the crime charged and the victim's testimony, there was competent evidence of sexual penetration to support inclusion of eighty (80) points for victim injury under Florida law (*id.*).  The court further concluded that since inclusion of the eighty (80) points did not enhance Petitioner's sentence beyond the statutory maximum, a jury finding of penetration was not required under Blakely v. Washington, 542 U.S. 296 (2004).

A determination of whether there was sufficient evidence to support the 80-point addition for sexual penetration under the Florida sentencing laws is solely within the province of the Florida courts.  "[A] state court's interpretation of state law . . . binds a federal court sitting in habeas corpus."  Bradshaw v. Richey, 546 U.S. 74, 76, 126 S. Ct. 602, 163 L. Ed. 2d 407 (2005); Mullaney v. Wilbur, 421 U.S. 684, 691, 95 S. Ct. 1881, 1886, 44 L. Ed. 2d 508 (1975) ("State courts are the ultimate expositors of state law," and federal courts must therefore abide by their rulings on matters of state law) (citations and footnote omitted); Carrizales v. Wainwright, 699 F.2d 1053, 1055 (11th Cir. 1983).  Additionally, the state court correctly concluded that since the fact that sexual penetration occurred did not increase Petitioner's sentence beyond the statutory maximum, it was not constitutionally necessary to submit that fact to the jury or require its proof beyond a reasonable doubt.[10]  *See* Apprendi v. New Jersey, 530 U.S. 466, 490, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000) (any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury and proved beyond a reasonable doubt); *see also* Blakely v. Washington, 542 U.S. 296, 303–04, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004) ("statutory maximum" for Apprendi purposes is the maximum sentence a judge may impose solely on the basis of facts reflected in the jury verdict or admitted by the defendant, not the maximum sentence a judge may impose after finding additional facts).

---

[10] Petitioner was convicted of two second-degree felonies.  *See* Fla. Stat. §§ 800.04(5), (6) (2001).  In Florida, a second-degree felony carries a maximum possible sentence of fifteen (15) years.  *See* Fla. Stat. § 775.082(3)(c) (2001).  Petitioner was sentenced to only ten (10) years of imprisonment on each count.

In light of the state court's determination that the 80-point addition was proper under Florida law, Petitioner failed to show a reasonable probability that the result of the sentencing proceeding would have been different if counsel had objected to the addition. Furthermore, since counsel had no meritorious basis to object to the 80-point addition on constitutional grounds, counsel's failure to object was not deficient performance, nor did it result in prejudice to Petitioner. *See* <u>Chandler v. Moore</u>, 240 F.3d 907, 917–18 (11th Cir. 2001) (rejecting argument for ineffective assistance of counsel where counsel failed to raise a non-meritorious claim). Therefore, the state court's adjudication of this claim was not an unreasonable application of <u>Strickland</u>.

      E.    <u>Ground Three: "Ineffective assistance of counsel for failure to object to the exhibition of emotion during the trial, failure to move for a mistrial, and failure to request a curative instruction"</u>

Petitioner contends defense counsel should have moved for a mistrial and requested a curative instruction when J.S., a witness, "began crying uncontrollably and simultaneously began hyperventilating" during her testimony before the jury (Doc. 1 at 13). Petitioner states J.S. was taken from the courtroom, and when the prosecutor returned from attending to her, he stated she was hyperventilating, and an assessment of whether she required medical attention was being made (*id.* at 13). Petitioner contends J.S.'s emotional display was a "blatant appeal for sympathy" and was so prejudicial that it prevented him from receiving a fair trial (*id.* at 14).

Respondent concedes that Petitioner exhausted this claim in the state courts (Doc. 19 at 36–37). However, Respondent argues, Petitioner is not entitled to relief because he failed to satisfy the AEDPA standard for federal habeas relief (*id.* at 37–43).

      1.    Clearly Established Federal Law

The <u>Strickland</u> standard, which governs claims of ineffective assistance of counsel, is set forth *supra*.

      2.    Federal Review of State Court Decision

Petitioner raised this ineffective assistance of counsel claim as Issue Three in his Rule 3.850 motion (Ex. T at 57–59). The state court denied the claim, and the First DCA affirmed. In the trial court's written decision, the court found as fact that J.S. testified to a collateral crime committed

against her by Petitioner, specifically, that Petitioner sexually abused her on two occasions when she was twelve years old (Ex. Y at 3–4). The court concluded that although J.S. reacted emotionally when she testified about the abuse, her reaction did not unfairly prejudice or inflame the jury to such an extent that a new trial was warranted (*id.* at 4). Therefore, Petitioner was not entitled to relief on this claim of ineffective assistance of counsel (*id.*).

As previously noted, the state court applied the correct legal standard to Petitioner's ineffective assistance of counsel claims. Therefore, Petitioner is entitled to relief only if he demonstrates that the state court's application of <u>Strickland</u> was unreasonable.

From a review of the trial transcript, it appears that J.S's emotional display was brief and inconsequential. The display occurred after the prosecutor had elicited her testimony and defense counsel had cross-examined her (Ex. E at 147–61). On re-direct, the prosecutor asked J.S. to tell the jury why she willingly allowed Petitioner to molest her on more than one occasion, which led to the following:

> A [by J.S.]. Do I have to?

> Q [by the prosecutor]. You didn't — is it hard for you? Why didn't you say no? Did you want him to do these things, J[]?

> A. No.

> Q. How did you feel about Jose?

> MR. FLEET [the prosecutor]: We'll take a break.

> THE COURT: Take Ms. S[] out until she gets her composure. Let her have a drink of water and calm down.

> MR. FLEET: Your Honor, for the record, I just advised defense counsel that under the circumstances I don't feel like I need to ask Ms. S[] any more questions, but I do realize he has the right to cross-examine her.

> THE COURT: Okay.
> MR. FLEET: So —

> MR. WHITEHEAD [defense counsel]: Judge, I would like to exercise that.

MR. FLEET:  Your Honor, can I — is it permissible that I could go check on Ms. S[]?

THE COURT:  Yeah, she's your witness.  You can.

MR. FLEET:  Thank you, You Honor.

THE COURT:  All right.  Mr. Shute [presumed to be a bailiff], let's see if Mr. Fleet is about ready to bring her back.  Otherwise, perhaps we could take another witness and leave Mr. Whitehead's cross-examination of Ms. S[] till after lunch.  We have to get this thing moving.

BAILIFF:  I'm going to go get the next witness, sir.

THE COURT:  All right.

MR. FLEET:  Your Honor, we're going to go ahead and call Dr. Lynne Keefe.  And Ms. S[] if defense counsel has no objection, we'll bring her back, Ms. S[] back, when she's feeling — she's hyperventilating now.  They're deciding now whether they need medical attention.

THE COURT:  Okay.  Is that okay with you, Mr. Whitehead?

MR. WHITEHEAD:  Okay.

(Ex. E at 164–65).  After Dr. Keefe testified, the prosecutor announced that J.S. was available to resume her testimony, and defense counsel questioned her without incident (*id.* at 186–89).  While no immediate instruction was given to the jury to disregard J.S.'s emotional display, the trial court later instructed the jurors that their verdict "should not be influenced by feelings of prejudice, bias, or sympathy.  Your verdict must be based on the evidence and the law contained in these instructions." (Ex. E at 328).  The jurors were additionally well informed of Petitioner's presumed innocence (*id.* at 322).

The judge who evaluated Petitioner's post-conviction claim is the same judge who presided at his trial (*see* Ex. E, Ex. Y at 9).  By virtue of his presence at Petitioner's trial, he was in a unique position to assess the intensity of J.S.'s emotional reaction and its effect, if any, on the jury and thus determine whether a motion for mistrial or curative instruction would have been properly granted.  He concluded that J.S.'s reaction did not unfairly prejudice or inflame the jury to the extent that a new trial was warranted.  Additionally, the fact that defense counsel insisted that J.S. return to the

stand for cross-examination, when he easily could have avoided her reappearance in front of the jury, suggests that her display of emotion was not unduly prejudicial to the defense. This supports the court's assessment that J.S.'s emotional reaction was not sufficiently prejudicial or inflammatory to warrant a curative instruction or mistrial.

Moreover, Petitioner has offered nothing but his own speculation to show the effect, if any, of J.S.'s display of emotion on the jury. Even, if this court speculated that the incident caused some jurors to become sympathetic to J.S., this would not demonstrate prejudice under Strickland, especially in light of the trial court's instruction to the jurors that they should not be influenced by feelings of sympathy and must base their verdict on only the evidence. "[A] jury is presumed . . . to follow its instructions." Weeks v. Angelone, 528 U.S. 225, 226, 120 S. Ct. 727, 145 L. Ed. 2d 727 (2000); see also Raulerson v. Wainwright, 753 F.2d 869, 872 (11th Cir. 1985). Because Petitioner must prove a reasonable probability of a different outcome, and the best that can be said about J.S.'s display of emotion is that it may or may not have impacted the jury and may or may not have affected the outcome, Petitioner failed to carry his burden of proof and persuasion under the prejudice prong of Strickland. See, e.g., Coleman v. Giles, 140 Fed. Appx. 895, 900–01, 2005 WL 1715749, AT * 5–6 (11th Cir. 2005) (unpublished) (state appellate court's determination that defendant's trial counsel was not ineffective for failing to object to a hysterical outburst by a rape and sodomy victim's grandmother and move for a mistrial was not objectively unreasonable, where evidence did not demonstrate that outburst had any effect on jury's ultimate determination of guilt; the victim testified at the trial to several occasions during which defendant penetrated her vagina and anus with his penis, the outburst in question appeared to have been short and inconsequential, the jury instructions admonished the jurors to avoid basing a decision of guilt on sympathy, emotion, or prejudice, and the defendant's argument regarding prejudice was purely speculative).[11] Therefore, Petitioner has failed to show that the state court's conclusion that a motion for a curative instruction or mistrial would not have been granted (thereby concluding that Petitioner was not prejudiced by counsel's failure to make such a motion) was an unreasonable application of Strickland.

    F.    Ground Four: "Ineffective assistance of counsel for failure to interject the required objection to the Petitioner's immediate family being excluded from the courtroom in

---

[11] The undersigned cites Coleman only as persuasive authority and recognizes that the opinion is not considered binding precedent. See 11th Cir. R. 36-2. Respondent attached a copy of Coleman to its answer (see Ex. HH).

violation of § 918.16, Florida Statutes, and without the mandated findings being made under *Waller v. Georgia*, 467 U.S. 39 (1984)."

Petitioner contends defense counsel performed ineffectively by failing to object to clearing of the courtroom prior to the child victim's testimony without the trial court making the findings required by Waller v. Georgia, 467 U.S. 39 (1984) (Doc. 1 at 15–16). Petitioner states his father-in-law, who was the only supportive family member present at trial, was in the restroom when the courtroom was cleared, and was unable to return because the courtroom was closed (*id.* at 16–17). Petitioner contends counsel should have objected to the exclusion of Petitioner's father-in-law from the courtroom under § 918.16, since he was "immediate family." Additionally, counsel should have objected to the court's failure to make required findings to justify closure under Waller, *supra* (*id.* at 15–17).

Respondent concedes that Petitioner exhausted this claim in the state courts (Doc. 19 at 43–44). However, Respondent argues, Petitioner is not entitled to relief because he failed to satisfy the AEDPA standard for federal habeas relief (*id.* at 44–51).

　　　　1.　　Clearly Established Federal Law

The clearly established Supreme Court law governing claims of ineffective assistance of counsel is the two pronged Strickland standard described *supra*.

　　　　2　　Federal Review of State Court Decision

Petitioner raised this ineffective assistance of counsel claim as Issue Four in his Rule 3.850 motion (Ex. T at 60–63). The state court denied the claim, and the First DCA affirmed. In the trial court's written decision, the court found as fact that prior to the victim's testimony, the State moved to close the courtroom, pursuant to Florida Statutes Section 918.16, and proffered the emotional trauma the testimony would cause the victim as the need for closing the courtroom (Ex. Y at 4–5). Section 918.16 provides:

> Except as provided in subsection (2), in the trial of any case, civil or criminal, when any person under the age of 16 . . . is testifying concerning any sex offense, the court shall clear the courtroom of all persons except parties to the cause and their immediate families or guardians, attorneys and their secretaries, officers of the court, jurors, newspaper reporters or broadcasters, court reporters, . . . .

Fla. Stat. § 918.16(1) (2001).

The state court additionally found that defense counsel did not object to the partial closure, so the court ordered the courtroom cleared (*id.* at 5). The court determined that defense counsel had no basis for opposing exclusion of Petitioner's father-in-law, because he was not a member of Petitioner's immediate family (*id.*) (citing <u>Alonso v. State</u>, 821 So. 2d 423 (Fla. 3d DCA 2002) (finding that cousin was not member of defendant's immediate family for purposes of section 918.16)). The court additionally concluded that even if Petitioner's father-in-law qualified as immediate family, Petitioner failed to show he was prejudiced by counsel's failure to object to the closing of the courtroom (*id.*).

To the extent Petitioner argues defense counsel should have objected to exclusion of Petitioner's father-in-law as a violation of Florida law, on the ground that his father-in-law qualified as immediate family, this court must defer to the state court's ruling that the father-in-law did not qualify as immediate family; therefore, no violation of Florida Statutes Section 918.16(1) occurred. *See* <u>Bradshaw</u>, 546 U.S. at 76; <u>Mullaney</u>, 421 U.S. at 691; <u>Carrizales</u>, 699 F.2d at 1055.

The court will next address Petitioner argument that defense counsel should have objected to closure of the courtroom on the ground that the court failed to make the requisite findings justifying closure required by <u>Waller</u>; therefore, his constitutional right to a public trial was denied. The right to a public criminal trial is secured by the Sixth Amendment. <u>Judd v. Haley</u>, 250 F.3d 1308, 1314 (11th Cir. 2001). Denial of a public trial is structural error. *Id.* Structural error is not subject to harmless error review on direct appeal. *Id.* "The mere demonstration that [a defendant's] right to a public trial was violated entitles a petitioner to relief." *Id.* Had defense counsel objected to closure of the trial as a violation of the federal constitution, he would have presented argument as to what a trial court must do to close a criminal trial, and the trial court would have made findings. As explained in <u>Waller v. Georgia</u>:

> [T]he party seeking to close the hearing must advance an overriding interest that is likely to be prejudiced, the closure must be no broader than necessary to protect that interest, the trial court must consider reasonable alternatives to closing the proceeding, and it must make findings adequate to support the closure.

467 U.S. 39, 48, 104 S. Ct. 2210, 81 L. Ed. 2d 31 (1984).

A partial closure presents a different issue than a total closure:

> When access to the courtroom is retained by some spectators (such as representatives of the press or the defendant's family members), we have found that the impact of the

closure is not as great, and not as deserving of such a rigorous level of constitutional scrutiny.

Judd, 250 F.3d at 1315. However, both "partial and total closures burden the defendant's constitutional rights, and before either is undertaken, a court 'must hold a hearing and articulate specific findings.'" *Id.* (quoting Douglas v. Wainwright, 739 F.2d 531, 532 (11th Cir. 1984)). If there is only a partial closure, the court "need merely find a 'substantial' reason for the partial closure, and need not satisfy the elements of the more rigorous Waller test." *Id.* (quoting Douglas, 739 F.2d at 533).

Even though a denial of a public trial is structural error, when denial of a public trial is the basis for a claim of ineffective assistance of counsel, prejudice to the outcome must be shown:

> [T]o prevail on his ineffective assistance claim stemming from the failure of his trial counsel to raise an objection to the closing of the courtroom, [a claimant] must show a reasonable probability of a different result in the trial if counsel had objected.

Purvis v. Crosby, 451 F.3d 734 (11th Cir. 2006). The "outcome" is the determination of guilt, not the ruling on the objection to closure of the courtroom. "When we are considering defective performance at the guilt stage, 'the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.'" *Id.* (quoting Strickland, 466 U.S. at 695).

In Purvis, the federal habeas petitioner sought to have his conviction for child molestation set aside because his trial counsel did not object when the state trial court cleared the courtroom of most of the public during the young victim's testimony. 451 F.3d at 735. The Eleventh Circuit determined that the most efficient way to decide the ineffective assistance of counsel claim was to "assume away three subsidiary issues and get straight to the prejudice question." *Id.* at 738. The court assumed that the closing of the courtroom during the victim's testimony was constitutional error under Waller, thereby putting aside any questions about whether it was proper under the test set out in the Waller decision. *Id.* The court also assumed that trial counsel's failure to object to the partial closure of the courtroom was "outside the wide range of professionally competent assistance," thereby putting aside any questions about the performance prong of the ineffective assistance of counsel claim. *Id.* (citing Strickland, 466 U .S. at 689). Finally, the court assumed that the state post-conviction court's phrasing of the prejudice test as whether there is "a reasonable

likelihood" that counsel's error "impacted the outcome of the trial," instead of using the more technically accurate "a reasonable probability of a different result" standard, took the case outside the scope of 28 U.S.C. § 2254(d)(1). Purvis, 451 F.3d at 738 (citing Strickland, 466 U.S. at 694). This third assumption put aside the question of whether the court owed any deference to the state court decision.

Even with those three assumptions, the Eleventh Circuit reached the same result as the state court; the habeas petitioner lost on the ineffective assistance claim because he has not established that he was prejudiced by his trial counsel's failure to object to the closure of the courtroom. Purvis, 451 F.3d at 738. The court reiterated the prejudice standard applicable to claims of defective performance at the guilt stage: "the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." Id. (citing Strickland, 466 U.S. at 695). The court then analyzed Purvis' claim as follows:

> Purvis cannot show that an objection from his counsel would have caused the factfinder to have a reasonable doubt about his guilt. If counsel had objected in a timely fashion and had persuaded the trial judge not to partially close the courtroom, there is no reason to believe that would have changed the victim's testimony in a way which would have created a reasonable doubt in the jury's mind. The victim could just as well have been a more sympathetic or credible witness if forced to testify publicly. We do not know, and when we do not know the party with the burden loses, and here that party is Purvis. See Strickland, 466 U.S. at 694, 104 S. Ct. at 2068 ("The defendant must show. . . .").
>
> Against this logic Purvis argues that an objection by his trial counsel would have preserved the issue for appeal and led to a reversal of his conviction, which would have been a different result from the affirmance that occurred. There are two flaws with this argument. One is its assumption that the trial judge would have overruled an objection if one had been made. There is as much reason to believe that pointing out the error of his ways to the trial judge would have caused him to mend those ways, thereby depriving Purvis of the issue on appeal. The second and more fundamental flaw in this argument is that it focuses on the outcome of the appeal, not of the trial. The Supreme Court in Strickland told us that when the claimed error of counsel occurred at the guilt stage of a trial (instead of on appeal) we are to gauge prejudice against the outcome of the trial: whether there is a reasonable probability of a different result at trial, not on appeal. Id. at 694–95, 104 S. Ct. at 2068–69.

Id. at 738–39. The Eleventh Circuit went on to reject Purvis' contention that he was not required to establish prejudice because an error in removing the public from the courtroom during a trial is

a "structural defect." *Id.* at 739. The court assumed for purposes of discussion that a partial closure of the courtroom was a structural error or defect, but determined that because the ineffective assistance circumstances did not fall under the three "exceptional circumstances" identified by the Supreme Court in Strickland as warranting a presumption of prejudice, Purvis was required to establish prejudice resulting from his counsel's error.[12] *Id.* at 740–43.

This court, like the Eleventh Circuit, will assume the following for purposes of discussion: (1) that the closing of the courtroom during the victim's testimony was constitutional error under Waller; (2) that trial counsel's failure to object to the closure was "outside the wide range of professionally competent assistance," and (3) that partial closure of the courtroom constituted a structural error or defect. Even in the context of these assumptions, Petitioner failed to show that the state court's determination that he failed to demonstrate prejudice was unreasonable. Petitioner asserts in his reply brief that he is not required to show prejudice (Doc. 24 at 23, 25); however, the Eleventh Circuit rejected this argument in Purvis. Additionally, although Petitioner alleges his father-in-law's presence was necessary to ensure he received a fair trial (*see* Doc. 24 at 23, 25), he has alleged nothing to show that the presence of his father-in-law would have changed the child victim's testimony in a way which would have created a reasonable doubt about his guilt in the jury's mind. The victim could just as well have been a more sympathetic or credible witness if forced to testify publicly. Because Petitioner failed to demonstrate a reasonable probability that the result of his trial would have been different if counsel had objected to closure of the courtroom during the victim's testimony, the state court's denial of his claim was not an unreasonable application of Strickland. *See, e.g.*, Charleston v. McDonough, No. 4:07cv260/SPM/WCS, 2010 WL 780200, at *5–10 (N.D. Fla. Feb. 26, 2010) (unpublished); Hanks v. McDonough, 4:05cv91/MMP/EMT, 2006 WL 3498601, at * (N.D. Fla. Dec. 1, 2006) (even if habeas petitioner could satisfy unreasonable performance prong of Strickland, petitioner cannot establish ineffective assistance claim because he was not prejudiced by trial counsel's failure to object to closure of courtroom) (unpublished).

---

[12] Those three "exceptional circumstances" are the following: (1) "actual or constructive denial of the assistance of counsel altogether," (2) "various kinds of state interference with counsel's assistance," and (3) where counsel "is burdened by conflicting interests arising from multiple representation situations," and counsel's performance is affected by the conflict. Purvis, 451 F.3d at 740–41 (citing Strickland, 466 U.S. at 692).

G.     <u>Ground Five: "The Petitioner was denied effective assistance of counsel and had his Due Process violated [sic] where trial counsel eliminated all presumption of innocence from the Petitioner while he was testifying."</u>

Petitioner concedes this is the same claim as asserted in Ground 1A (*see* Doc. 24 at 27); therefore, the court relies upon its analysis of that claim *supra*.

H.     <u>Ground Six: "The Petitioner received [c]onstitutionally infirm assistance of counsel where counsel acquiesced to thirty minutes closing arguments [sic] during a two-count information which could have resulted in thirty years in prison."</u>

Petitioner contends defense counsel provided ineffective representation by agreeing to a thirty-minute limitation on closing arguments (Doc. 1 at 21). Petitioner asserts that in light of the length of the trial (in one section of his argument he states the trial lasted three days and in another section he states four days), the number of witnesses who testified, the complexity of the case, and the nature of the charges, thirty minutes was an insufficient amount of time to fairly apprise the jury of the complexities of the case, the theory of defense, and any misstatements of law or fact by the prosecution (*id.* at 21–23).

Respondent contends Petitioner failed to exhaust this claim (Doc. 19 at 51–52). Respondent concedes that Petitioner raised this claim in his Rule 3.850 motion, and the state court summarily denied it on the merits without holding an evidentiary hearing on any of the post-conviction claims. Respondent asserts that even though Petitioner was not required by state procedural rules to file a brief on appeal, Petitioner chose to file a brief and argued only six of his eleven claims, one of which was <u>not</u> the instant claim (*id.* at 52–54). Respondent contends Petitioner's failure to argue the claim constituted an abandonment of the issue on appeal and a procedural default for purposes of federal review (*id.* at 54–59). Additionally, Petitioner cannot show cause for the procedural default or that the court's failure to address the merits of the claim will result in a fundamental miscarriage of justice (*id.* at 59). Therefore, he is not entitled to federal review of his claim. Alternatively, Respondent argues Petitioner has failed to show he is entitled to relief on the merits of his claim (*id.* at 60–63).

Notwithstanding Petitioner's failure to argue this issue in his appeal of the trial court's denial of his Rule 3.850 motion, the trial court adjudicated the merits of the claim, and Petitioner has failed to demonstrate that the trial court unreasonably applied <u>Strickland</u> in doing so. Petitioner raised this ineffective assistance of counsel claim as Issue Six in his Rule 3.850 motion (Ex. T at 65–68). In

the trial court's written decision, the court determined that the actual issues involved in the criminal case were not so complex as to warrant additional time for closing arguments (Ex. Y at 6). The court also determine that defense counsel's closing argument was competent and addressed the relevant issues (*id.*). Additionally, Petitioner failed to point to any specific defenses or issues that defense counsel failed to present in closing argument. Therefore, Petitioner failed to show counsel had a meritorious basis for objecting to the time limitation (*id.*).

Initially, the undersigned notes that Petitioner's portrait of the trial proceedings is misleading. The evidentiary proceedings (excluding jury selection, closing arguments, and jury instructions) lasted only one day (*see* Ex. E). Furthermore, besides Petitioner, only six witnesses testified, the victim, the victim's mother, a sheriff's deputy who investigated the allegations, Dr. Keefe (the physician who examined the victim after she reported the abuse), and two "collateral crime" witnesses (Ex. E). Additionally, as the state court noted, Petitioner has not identified any argument or issue that should have been argued by defense counsel but was not. Therefore, he failed to show that his counsel's failure to object to the thirty-minute limitation was unreasonable, or that there is a reasonable probability that the outcome of trial would have been different if counsel opposed the limitation and was given more time for closing argument. Accordingly, Petitioner is not entitled to federal habeas relief on this claim.

I.    Ground Seven:  "The Petitioner received [c]onstitutionally infirm assistance of counsel where counsel failed to object to the prosecution vouching for the credibility of the State's witnesses."

Petitioner contends he received ineffective assistance when defense counsel failed to object to the following comments of the prosecutor during closing argument, on the ground that the comments constituted improper vouching for the credibility of its witnesses:

1.    "There is no evidence that he touched her breasts and there's no evidence that he touched her buttocks. But there is irrefutable evidence that he touched her vaginal area."

2.    "They came because they were subpoenaed. They were brought in to tell the truth. That is not indications of someone who has conspired to fabricate charges and to lie and to bring somebody forward for the justice that's really guilty."

3.    "Did they have some interest in how the case should be decided? Well, certainly, Mr. Torres does. Mr. Torres has a monumental, monumental

motivation to lie and not tell the truth, because if he's found guilty, bad things could happen to him, unpleasant things. He could be sentenced by the Court. He could be punished. The victims, L.A.M.; Zoraida, the mom; the others, J[] and I[], they have no reason to lie. They have no reason to make this up. None whatsoever."

    4.    But I ask that you consider the evidence, consider the credibility of the witnesses, the sincerity of their actions, and consider the trustworthiness of Jose Torres. Based on his own words, he's not perfect. He's not trustworthy."

    5.    "Dr. Keefe, I know she's going to completely risk her entire career and credibility and reputation on one case. I doubt that would even come close to being true."

(Doc. 1 at 23–24). Petitioner contends the prosecutor placed the prestige of the State behind the witness' credibility, which led the jury to believe that the witness' versions of events were more credible than Petitioner's (*id.* at 24–25).

Respondent argues the same exhaustion issue as the previous claim, that is, Petitioner presented this claim in his Rule 3.850 motion, and the trial court adjudicated the claim, but Petitioner abandoned the issue by failing to argue it in his appellate brief (Doc. 19 at 63–64). Nevertheless, Respondent argues, Petitioner failed to show he is entitled to federal habeas relief on this claim (*id.* at 64–68).

As with Petitioner's previous claim, the undersigned will review the trial court's adjudication of the claim notwithstanding Petitioner's failure to brief the issue on appeal. Petitioner raised this claim as Issue Seven in his Rule 3.850 motion (Ex. T at 68–70). The post-conviction court examined the statements identified by Petitioner and concluded that they did not constitute improper vouching (Ex. Y at 6). The court additionally determined that Petitioner failed to show he was prejudiced by the statements (*id.*).

Attempts to bolster a witness by vouching for his credibility are improper "if the jury could reasonably believe that the prosecutor indicated a personal belief in the witness' credibility." United States v. Eyster, 948 F.2d 1196, 1206 (11th Cir. 1991) (citing United States v. Sims, 719 F.2d 375, 377 (11th Cir. 1983)). A jury could believe that the prosecutor personally believed in the witness' credibility "if the prosecutor either places the prestige of the government behind the witness, by making explicit personal assurances of the witness' veracity, or the prosecutor implicitly vouches for the witness' veracity by indicating that information not presented to the jury supports the

testimony." *Id.* (citation omitted). Thus, the court must examine whether (1) the prosecutor explicitly personally assured the witness' credibility, or (2) the prosecutor implicitly vouched for the witness' credibility by implying that evidence not presented to the jury supports the witness' testimony. United States v. Castro, 89 F.3d 1443, 1457 (11th Cir. 1996) (citing Sims, 719 F.2d at 377).

However, it should be noted that "[t]he prohibition against vouching does not forbid prosecutors from arguing credibility . . . it forbids arguing credibility based on the reputation of the government office or on evidence not before the jury." United States v. Hernandez, 921 F.2d 1569, 1573 (11th Cir. 1991). Furthermore, when the prosecutor voices a personal opinion but indicates this belief is based on evidence in the record, the comment is not improper. United States v. Granville, 716 F.2d 819, 822 (11th Cir. 1983) (finding no prosecutorial misconduct where prosecutor, in effort to support testimony of two Government witnesses, only pointed to matters in evidence: the demeanor of one witness and testimony of support witnesses, as well as a tape recording corroborating the testimony of another) (citations omitted).

Upon review of the prosecutor's comments in the context of all arguments made by the prosecutor and defense counsel during closing arguments, the undersigned concludes that Petitioner failed to show that defense counsel's failure to object to any of the comments was unreasonable. None of the prosecutor's comments identified by Petitioner is an explicit personal endorsement of a witness' credibility, nor did any of the comments include a reference to evidence not before the jury. Furthermore, Petitioner failed to show a reasonable probability that the outcome of trial would have been different if counsel had objected to the comments. Therefore; Petitioner has failed to demonstrate that the state court's denial of his claim was an unreasonable application of Strickland.

J.    Ground Eight: "The Petitioner received [c]onstitutionally infirm assistance of counsel where counsel failed to call a witness who was tremendously pertinent to this case and could have refuted the victim's version of events."

Petitioner contends defense counsel performed ineffectively by failing to call Annasiara Goodlow/Goodwin as a witness at trial (Doc. 1 at 25–26). He states Ms. Goodlow/Goodwin is the only witness who could have "verified or disapproved" the victim's version of events because she was the only person to whom the victim revealed the identity of her assailant, and she could have narrowed down the date that the sexual molestation occurred, so Petitioner could have properly

defended himself (*id.* at 25–26). Petitioner states defense counsel referred to Annasiara Goodlow/Goodwin in his closing argument as the recipient of a note written by the victim (in which the victim stated that someone did something to her, but she did not identify the person), but counsel failed to call her as a witness (*id.*). He states Ms. Goodlow/Goodwin was available and willing to testify, and he asked defense counsel to call her as a witness (*id.* at 26). Petitioner argues the testimony of Ms. Goodlow/Goodwin was vital, as evidenced by the fact that the jury submitted a question to the judge during deliberations asking whether Ms. Goodwin had been deposed (*id.* at 26).

Respondent argues this claim is procedurally barred from federal review because the state court rejected the claim based upon an independent and adequate state ground of procedural bar, namely, Petitioner 's failure to satisfy state law pleading requirements to establish a facially sufficient claim of ineffective counsel (Doc. 19 at 69–70). Respondent further argues Petitioner cannot return to state court to properly plead his claim because state procedural rules bar successive Rule 3.850 motions (*id.* at 71). Nevertheless, Respondent argues, Petitioner failed to demonstrate that the state court's denial of his claim was an unreasonable application of Strickland (*id.* at 73–74).

       1.       Clearly Established Federal Law

Pursuant to Strickland, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. Strickland, 466 U.S. at 691. In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments. *Id.* "One of the primary duties defense counsel owes to his client is the duty to prepare himself adequately prior" to a legal proceeding. Lawhorn v. Allen, 519 F.3d 1272, 1295 (11th Cir. 2008) (quoting Magill v. Dugger, 824 F.2d 879, 886 (11th Cir. 1987)). Such preparation includes an understanding of the legal procedures and the legal significance of tactical decisions within those proceedings. Young v. Zant, 677 F.2d 792, 794, 799–800 (11th Cir. 1982) (an attorney's reliance on former law and unawareness of procedure deprived his client of effective assistance). Counsel's decision whether to call a particular witness is a matter of trial strategy entitled to great deference. Chandler, 218 F.3d at 1314 n.14 (citing Waters v. Thomas, 46 F.3d 1506, 1512, 1518–19 (11th Cir. 1995) (en banc)). "Complaints of uncalled witnesses are not favored, because the presentation of

testimonial evidence is a matter of trial strategy and because allegations of what a witness would have testified are largely speculative." Buckelew v. United States, 575 F.2d 515, 521 (5th Cir. 1978).[13]

 2 Federal Review of State Court Decision

Petitioner raised this ineffective assistance of counsel claim as Issue Eight in his Rule 3.850 motion (Ex. T at 71–73). In the trial court's written decision, the court found as fact that the trial record showed that the victim had written a note addressed to Ms. Goodwin seeking her advice about "that one guy and what he did to me" (Ex. Y at 6–7). The court further found that the note did not accuse Petitioner of any misconduct (id. at 7). The court found that although Petitioner alleged Ms. Goodwin "could have verified or disproved the allege[d] victim's version of events," he failed to allege what the substance of Ms. Goodwin's testimony would have been or how it would have affected his case (id.). The court concluded that in the absence of a showing that Ms. Goodwin would have provided testimony which would have cast doubt upon Petitioner's guilt, his claim was facially insufficient and, therefore, denied (id.).

The state court's determination that Petitioner failed to show that Ms. Goodwin would have provided testimony which would have cast doubt upon his guilt was tantamount to a conclusion that Petitioner failed to satisfy the prejudice prong of Strickland. When a claim is based upon "the testimony of a putative witness," the petitioner must generally present evidence in "the form of actual testimony by the witness or on affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim." United States v. Ashimi, 932 F.2d 643, 650 (7th Cir. 1991) (footnotes omitted)); see also United States v. Schaflander, 743 F.2d 714, 721 (9th Cir. 1984) (to succeed on claim of ineffective assistance of counsel based upon counsel's failure to investigate or interview potential witnesses, petitioner must make sufficient factual showing substantiating testimony of proposed witnesses, for example, affidavits or sworn statements).

In the instant case, the note from the victim to Ms. Goodwin is part of the state court record (Ex. F). In the note, the victim states, "Annasiara, [w]hen are we gonna tell Mrs. Burt about that one

---

[13] In Bonner v. City of Prichard, 661 F.2d 1206 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all former Fifth Circuit decisions rendered before October 1, 1981.

guy and what he did to me? Almost every I [sic] cry because of what he did to me." (*id.*). Ms. Goodwin responded, "I am really sorry about what happend [sic] we'll do it in P.E., but you need 2 [sic] tell your mom first, because they will call her and maybe H.R.S. so tell her okay." (*id.*). Petitioner's assertions that Ms. Goodwin would have "verified or disapproved" the victim's version of events and could have narrowed down the date that the sexual molestation occurred are based purely on Petitioner's self-serving speculation. He failed to submit, either to the state court or this court, a sworn affidavit from Ms. Goodwin stating what testimony she would have provided; nor has Petitioner otherwise made a sufficient factual showing substantiating Ms. Goodwin's proposed testimony. His allegations are thus insufficient to show a reasonable probability that the result of his trial would have been different if she had testified. Therefore, the state court's determination that Petitioner failed to show he was prejudiced by counsel's failure to call Ms. Goodwin as a witness was not an unreasonable application of <u>Strickland</u>.

> K.     <u>Ground Nine: "The Petitioner received [c]onstitutionally infirm assistance of counsel where counsel failed to interpose an objection to the statement of particulars/indictment and information showing one date and the evidence adduced at trial presenting something very different."</u>

> L.     <u>Ground Ten: "The Petitioner received [c]onstitutionally infirm assistance of counsel where counsel failed to move for a judgment of acquittal on the basis that the statement of particulars/indictment and information exhibiting one date and the evidence introduced at trial exhibited something extremely different."</u>

Petitioner asserts the charging document alleged that the lewd or lascivious molestation (Count 1) occurred "on or about November 1, 2001"; however, the victim testified that the molestation occurred during or after Thanksgiving, which was November 22, 2001 (Doc. 1 at 27–28). Petitioner contends when the charging document narrows the time within which the crime occurred, and the prosecution fails to show the defendant committed the offense within that time frame, the conviction must be reversed (*id.* at 28). Petitioner contends if defense counsel had brought this discrepancy to the trial court's attention, through an objection or a motion for judgment of acquittal, he would have been acquitted of the lewd or lascivious molestation count (*id.* at 29–32).

Respondent argues the same exhaustion issue as Grounds Six and Seven, that is, Petitioner presented the claims in his Rule 3.850 motion, and the trial court adjudicated the claims, but Petitioner abandoned the issues by failing to argue them in his appellate brief (Doc. 19 at 75).

Nevertheless, Respondent argues, Petitioner failed to show he is entitled to federal habeas relief on the claims (*id.* at 79–82). Respondent contends the state court's determination that defense counsel was not ineffective, because the variance between the date of the offense alleged in the charging document and adduced at trial was not fatal under Florida law, was not unreasonable under Strickland (*id.* at 79).

Notwithstanding Petitioner's failure to argue either of these issues in his appeal of the trial court's denial of his Rule 3.850 motion, the trial court adjudicated the merits of the claims, and Petitioner has failed to demonstrate that the trial court unreasonably applied Strickland in doing so. Petitioner raised these ineffective assistance of counsel claims as Issue Nine and Issue Ten in his Rule 3.850 motion (Ex. T at 73–78). The trial court combined the claims for analysis in its written decision (Ex. Y at 7–8). The court determined that, pursuant to Rule 3.140(o) of the Florida Rules of Criminal Procedure and Florida cases interpreting that rule, the date of a criminal offense is not a substantial element of the crime and need not exactly match the charging document (*id.*). Therefore, the fact that the lewd or lascivious molestation did not occur on November 1, 2001, was not fatal; and Petitioner was not entitled to an acquittal on that basis (*id.* at 8).[14]

This court must defer to the state court's ruling that the variance in the date the lewd or lascivious molestation occurred as alleged in the information and as adduced from the victim's trial testimony (which varied from November 1, 2001, to November 22, 2001) did not provide a sufficient basis for an acquittal or dismissal of the charge under Florida law. *See* Bradshaw, 546 U.S. at 76; Mullaney, 421 U.S. at 691; Carrizales, 699 F.2d at 1055. In light of this determination, Petitioner failed to show deficient performance or a reasonable probability that the result of the proceedings would have been different if counsel had objected to the variance or made a motion for

---

[14] Rule 3.140(o) provides:

**Defects and Variances**. No indictment or information, or any count thereof, shall be dismissed or judgment arrested, or new trial granted on account of any defect in the form of the indictment or information or of misjoinder of offenses or for any cause whatsoever, unless the court shall be of the opinion that the indictment or information is so vague, indistinct, and indefinite as to mislead the accused and embarrass him or her in the preparation of a defense or expose the accused after conviction or acquittal to substantial danger of a new prosecution for the same offense.

Fla. R. Crim. P. 3.140(o) (2001).

judgment of acquittal. *See* <u>Chandler</u>, 240 F.3d at 917–18 (rejecting argument for ineffective assistance of counsel where counsel failed to raise a non-meritorious claim). Therefore, the state court's adjudication of Petitioner's claims was not an unreasonable application of <u>Strickland</u>.

M. <u>Ground Eleven: "The Petitioner received constitutionally infirm assistance of counsel where counsel failed interpose [sic] an objection when a juror tainted the entire pool of veniremen via a personal inappropriate exchange between a potential juror and the Assistance [sic] State Attorney."</u>

Petitioner contends defense counsel should have objected when a potential juror and the prosecutor engaged in a verbal exchange which revealed that they were acquaintances and had not seen each other for some time (Doc. 1 at 32–33). Petitioner asserts after the exchange, the potential juror conveyed to the entire jury pool that the prosecutor was "a great guy," and she regularly invited him and his family to her home for dinner (*id.*). Petitioner argues this communication contaminated the jury pool by lending credibility to the prosecutor, thereby rendering his trial unfair (*id.* at 32). Petitioner acknowledges that the potential juror who made the comment was not selected for the jury; but he asserts the incident "certainly" affected the jury's deliberations (*id.*).

Respondent argues the same exhaustion issue as Grounds Six, Seven, Nine, and Ten, that is, Petitioner presented the claim in his Rule 3.850 motion, and the trial court adjudicated the claim, but Petitioner abandoned the issue by failing to argue it in his appellate brief (Doc. 19 at 83–85). Nevertheless, Respondent argues, Petitioner failed to show he is entitled to federal habeas relief on this claim (*id.* at 84–85).

Notwithstanding Petitioner's failure to argue either of these issues in his appeal of the trial court's denial of his Rule 3.850 motion, the trial court adjudicated the merits of the claims, and Petitioner has failed to demonstrate that the trial court unreasonably applied <u>Strickland</u> in doing so. Petitioner raised this ineffective assistance of counsel claims as Issue Eleven in his Rule 3.850 motion (Ex. T at 79–81). In the trial court's written decision, the court found that Petitioner exaggerated the exchange between the prosecutor and the potential juror, who did not actually serve on the jury (Ex. Y at 8). The court found as fact that during voir dire, the prosecutor recognized one of the potential jurors and asked how she was doing (*id.*). The juror replied that she was "fine." (*id.*). The court found that there was no additional communication between the prosecutor and the potential juror (*id.*). Based upon these findings, the court determined that the exchange was

"completely innocuous" and in no way compromised the jury pool; therefore, Petitioner was not entitled to relief on his claim (*id.*).

The record of the voir dire proceedings demonstrates that at the beginning of voir dire, the prosecutor, Mr. Fleet, introduced himself and asked the potential jurors the following:

> Does anybody here know me, in the front two rows? Any if you do, raise your hand because we need to — and we didn't get your questionnaires until this morning. So that's why I was trying to sort through them quickly. And that's Ms. Bankston, are you Bruce's wife?
>
> MS. BANKSTON: Yes.
>
> MR. FLEET: Okay. I haven't seen you in a long time. How are you doing?
>
> MS. BANKSTON: Fine, thank you.
>
> MR. FLEET: Okay. Does anyone else feel like they know me? . . . Does anyone in the first few rows other than Ms. Bankston know anybody at the state attorney's office or think you might know somebody at the state attorney's office?

(Ex. E at 17–19). Later during voir dire, Mr. Fleet asked the potential jurors whether anyone had an outside commitment that may cause him or her difficulty sitting as a juror (*id.* at 42). Ms. Bankston stated she and her family had travel plans:

> MS. BANKSTON: We have travel plans.
>
> MR. FLEET: Travel plans. Vacation?
>
> MS. BANKSTON: Yes.
>
> MR. FLEET: When are you folks leaving?
>
> MS. BANKSTON: Thursday morning.
>
> MR. FLEET: Thursday morning?
>
> MS. BANKSTON: Uh-huh.
>
> MR. FLEET: We don't expect the trial, for us to be working past 5:00 either of those days. Probably we would get out early on Wednesday, my prediction is. Would that — if that was the schedule, if we worked — basically, worked hours tomorrow and Wednesday morning, would that interfere with your travel plans, interfere with your sitting as a juror, you think?

MS. BANKSTON:  I think so.

MR. FLEET:  You think so?  Would it be a distraction from your —

MS. BANKSTON:  I just wouldn't have time to accomplish everything that needs to be done before we leave.  And I have three children to consider, too.  I'm a baby-sitter for them.

MR FLEET:  Okay.

(*id.* at 43).  The record reflects no other interaction between the prosecutor and Ms. Bankston, nor does the record indicate any comments by Ms. Bankston to other members of the venire.  The jury was selected, and Ms. Bankston was not a member (*id.* at 67).  The trial judge announced the members of the jury and admonished them not to discuss the case amongst themselves or with anyone else, and not to allow anyone to approach them and discuss the case (*id.* at 68–69).

Based upon the record, there was absolutely no basis for defense counsel to object to the verbal exchanges between the prosecutor and Ms. Bankston.  Additionally, Petitioner failed to make a sufficient factual showing that Ms. Bankston made any statements regarding Mr. Fleet to the venire.  Therefore, he failed to show that defense counsel's failure to lodge an objection was deficient, or that there was a reasonable probability of a different outcome at trial if counsel had objected.  Therefore, Petitioner failed to establish that the state court's adjudication of the claim was an unreasonable application of <u>Strickland</u>.

V.      CERTIFICATE OF APPEALABILITY

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); <u>Slack v. McDaniel</u>, 529 U.S. 473, 483–84, 120 S. Ct. 1595, 1603–04, 146 L. Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of new Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED**:

1.      That the petition for writ of habeas corpus (Doc. 1) be **DENIED**.

2.      That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 3rd day of November 2010.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M.  TIMOTHY**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof.  Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.  A copy of objections shall be served upon the magistrate judge and all other parties.  Failure to object may limit the scope of appellate review of factual findings.  *See* 28 U.S.C. § 636; United States v. Roberts, 858 F.2d 698, 701 (11th Cir. 1988).**